NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE CASTILLO, | |
| Plaintiff, | Civil Action No.: 11-1296 (ES) |
| v. | |
| | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, District Judge**

**I.     Introduction**

Before the Court is an appeal filed by Jose Castillo ("Claimant" or "Mr. Castillo") seeking review of the final decision of the Commissioner of Social Security ("Commissioner") partially approving Plaintiff's application under Title II and Title XVI of the Social Security Act. The Court has considered the submissions in support of and in opposition to the present application, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court vacates the Administrative Law Judge's ("ALJ") judgment and will remand this matter to the Commissioner for further proceedings consistent with this Court's Opinion.

**II.    Background**

On August 30, 2007, the Claimant applied for Social Security Income ("SSI") benefits alleging disability due to HIV, as well as hepatitis B and C. (R. at 20, 69). Mr. Castillo's

application for SSI benefits was denied on April 9, 2008, and again upon reconsideration on February 19, 2009. (R. at 32-33).

On March 23, 2009, Claimant requested a hearing before an ALJ. (*Ibid.*) Claimant's request was granted and a hearing was held on October 26, 2009 before ALJ Donna Krappa. (*Id.* at 49). On November 24, 2009, the ALJ issued a decision that found that Mr. Castillo was not disabled under the Social Security Act. As a result, the ALJ denied Claimant's request for benefits. (*Id.* at 20-29).

On December 1, 2009, Mr. Castillo filed a Request for Review with the Appeals Council of the Office of Disability Adjudication and Review seeking review of the ALJ's November 24, 2009 decision. (*Id.* at 13). On October 22, 2010, the Appeals Council granted Claimant's request for review, and informed him that they intended to find him disabled beginning November 18, 2008 instead of August 30, 2007—the date that Claimant applied for Supplemental Security Income. (*Id.* at 497-504). On January 7, 2011, the Appeals Council issued a partially favorable decision finding Claimant totally disabled beginning November 18, 2008 when Claimant met the severity of the impairment described in section 14.08(H) of Appendix 1 to 20 CFR Part 404, Subpart P, for HIV wasting syndrome. (*Ibid.*). In reaching their decision, the Appeals Council adopted all of the ALJ's findings, including that the Claimant could perform a limited range of light work, but only up to November 18, 2008. (*Id.* at 11).

On March 8, 2011, Mr. Castillo filed a Complaint with the United States District Court for the District of New Jersey. The Court received the Administrative record on May 25, 2011. The parties have submitted their respective briefing, and the matter is now ripe for this Court's adjudication.

### III. Legal Standards

#### A. Standard for Awarding Benefits

To qualify for Social Security benefits, the claimant must first establish that he is "disabled." 42 U.S.C. §1381. "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [him] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotation marks omitted). A claimant is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At step one, the Commissioner must determine whether the claimant is currently engaging in any substantial gainful activity. If a claimant has not engaged in substantial gainful activity, the Commissioner turns to step two of the analysis.
>
> (ii) At step two, the Commissioner considers whether the claimant's impairment or combination of impairments is (or are) severe. If the impairment is not severe, the claimant is not disabled and the evaluation ends. If, however, the claimant has a severe impairment, the analysis proceeds to step three of the evaluative process.
>
> (iii) At step three, the Commissioner must decide whether the claimant suffers from a listed impairment. If the claimant meets a listed impairment, he is disabled. If the claimant does not suffer from a listed impairment, or its equivalent, then the analysis proceeds to step four.

> (iv) Before considering step four, the Commissioner must first determine the claimant's residual functional capacity. At step four, the Commissioner determines whether based on claimant's residual functional capacity he can still do his past relevant work. If the claimant has the residual functional capacity to perform his last work, he is not disabled. If he is unable to do any past relevant work, the analysis proceeds to the step five.
>
> (v) At step five, the Commissioner must determine whether the claimant is able to do any other work in the national economy, considering his residual functional capacity, age, education, and work experience. If the Commissioner cannot show that work exists, then the claimant is entitled to disability benefits.

20 C.F.R. § 404.1520(a)(4).

### B.  Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof.  *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  At step one, the claimant has the burden of establishing that he has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  If the claimant is able to demonstrate both that he has not engaged in substantial gainful activity and that he suffers from a severe impairment, then the claimant must then demonstrate—at step three—that his impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(d).  If he is able to make this showing then he is presumed disabled.  If he cannot show that he meets or exceeds a listed impairment, then at step four he must show that his residual functional capacity does not permit him to return to her previous work.  20 C.F.R. § 404.1520(e).  If the claimant meets this burden, then at step five, the burden

shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(g). If the Commissioner cannot meet this burden then the claimant shall receive disability benefits.

### C. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the ALJ "must adequately explain his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa.1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

### IV. The ALJ's Findings and Final Determination

At step one of the analysis, the ALJ found that the "[C]laimant has not engaged in substantial gainful activity since August 30, 2007." (R. at 23). At step two, the ALJ determined

that the medical evidence supported a finding that the Claimant suffered from the following severe impairments: HIV infection, hepatitis B and C, and substance abuse. (*Ibid*).  At step three of the evaluative process, the ALJ concluded that "the [C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Ibid.*).  As part of the step four analysis, the ALJ explained that the Claimant retained the residual functional capacity to:  "lift and/or carry ten pounds frequently and twenty pounds occasionally; perform unlimited pushing and pulling within the weight restriction noted above; [] sit for a total of 6 hours; and [] stand or walk for a total of 6 hours." (*Id.* at 23-24).  Based upon Mr. Castillo's residual functional capacity, the ALJ found that the Claimant was able to perform jobs that "require no climbing of ladders, ropes or scaffolds; that require only occasional climbing of stairs and ramps; that require only occasional balancing, stooping, kneeling, crouching and crawling; require no exposure to unprotected heights, hazards or dangerous machinery; that do not involve exposure to temperature extremes . . . ; that do not involve exposure to undue amounts of dust or known chemical irritants; that are simple, unskilled and repetitive; and that are low stress." (*Ibid.*).  The ALJ noted that "[w]hile the [C]laimant has low CD4 counts, he has not had any hospitalizations, emergency room visits, or treatment for opportunistic disease."  (*Id.* at 27).   The ALJ also determined that "the [C]laimant was unable to perform any past relevant work." (*Ibid.*).  Thus, the ALJ proceeded to step five and determined that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [C]laimant can perform." (*Id.* at 28).  Consequently, the ALJ

concluded that Mr. Castillo was not disabled within the meaning of the Social Security Act, and therefore denied Mr. Castillo benefits. (*Id.* at 29).

## V.     Analysis: Review of the ALJ's Determination

On appeal, Mr. Castillo argues that substantial evidence existed in the administrative record that supported a finding of disability. (Cl. Moving Br. at 9). Therefore, Mr. Castillo asks this Court to reverse the Commissioner's final administrative decision. Alternatively, Mr. Castillo asks the Court to remand this matter back to the Commissioner for reconsideration in light of alleged deficiencies contained in the ALJ's decision. (*Ibid.*). The alleged deficiencies are: (1) the ALJ improperly failed to obtain the testimony of a medical expert (*id*. at 11); (2) the Claimant's residual functional capacity was not sufficiently explained by the ALJ (*id.* at 18); and (3) the ALJ improperly failed to rely on the Vocational Expert's testimony in response to hypothetical limitations posed by Claimant's counsel. (*Id.* at 23.) Below, the Court addresses each alleged deficiency in turn.

### A.     ALJ improperly Failed to Obtain the Testimony of a Medical Expert

Mr. Castillo claims that the ALJ erred by failing to obtain an expert opinion from a medical advisor. Specifically, Mr. Castillo argues that a medical expert is required because HIV is a "slowly progressing" disease in which the Commissioner must infer the onset date. (*Id.* at 13).

The Court is not persuaded by Claimant's argument for the following reasons. First, under the regulations, an ALJ's decision to call a medical expert is discretionary. Indeed, "Administrative law judges *may* [] *ask for and consider opinions from medical experts* on the nature and severity of your impairment(s) and on whether your impairment(s) equals the

requirements of any impairment listed." 20 C.F.R. § 416.927(e)(2)(iii) (emphasis added). An ALJ is only required to obtain medical expert testimony in the following instances: (1) when ordered by the appeals council or a court; (2) to evaluate and interpret background medical test data; or (3) "when the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing." HALLEX I–2–5–34(B): When to Obtain Medical Expert Opinion, *available at* http://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html. The Court does not find that a determination of the correct onset date of disability fits into any of these categories. For that reason, Claimant's argument is misplaced.

Second, the Court finds Plaintiff's reliance on *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001), and *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003), to be inapposite. In *Walton*, the Third Circuit held that an ALJ must call upon the services of a medical advisor not simply because the purported impairment was alleged to be slowly progressing, but also because "the alleged onset date was [30 years] in the past [and] [a]dequate medical records for the most relevant period were not available." 243 F.3d at 709; *see also Newell*, 347 F.3d at 549 n.7; *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107-08 (3d Cir. 2007) (distinguishing *Walton* and *Newell* and affirming the decision of the district court because the ALJ had access to adequate medical records from the relevant time period). Here, Claimant contends that medical expert testimony was required because HIV is a slowly progressing disease. Claimant does not, however, argue that medical records for the most relevant time period were not available. *See Walton*, 243 F.3d at 709. Nor could Claimant make this argument in light of the extensive record, which is made up of numerous evaluations from examining, treating, and consultative physicians, as well as social workers between 2001 and 2009. Claimant does not, and cannot,

contend that adequate medical records during the relevant period are unavailable. For these reasons, the Court finds Mr. Castillo's argument misplaced, and concludes that the ALJ was not required to obtain medical expert testimony to establish the onset date.

### B. Residual Functional Capacity Determination

To satisfy the requirements at step four, the ALJ's decision must contain an assessment of Mr. Castillo's residual functional capacity.

"'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* C.F.R. § 404.1545(a). "In making a residual functional capacity determination, the ALJ must consider all evidence before him." *Ibid.* "Additionally, if the ALJ decides to reject any evidence, medical or otherwise, he must explain why he is rejecting it to enable meaningful judicial review." *Padilla v. Astrue*, No. 10-4968, 2011 WL 6303248 at *8 (D.N.J. Dec. 15, 2011) (citing *Burnett*, 220 F.3d at 122). "Moreover, the ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)).

Mr. Castillo contends that "no explanation is devoted to any of [the Claimant's residual functional capacity] restrictions." (Cl. Moving Br. at 22). He further argues that "the ALJ never explains why [Claimant] can do light work, never mentions [Claimant's] anemia, never combines all of plaintiff's impairments at step three, never takes them into consideration at step four RFC [sic]." (*Ibid.*). Conversely, the government argues that the "ALJ's [residual functional

capacity] finding is supported by the medical evidence as a whole." (Gov. Opp. Br. at 10). Specifically, the government contends that the Claimant's ability to perform light work is supported by the findings of Dr. Hoffman, a consultative examiner; Dr. Mohammed Rizwan, a state agency physician; diagnostic testing of record; and Claimant's own admissions detailed in treatment notes from Jersey City Medical Center. (*Id.* at 10-12).

The Court finds that Mr. Castillo has the better argument for the following two reasons.[2] First, the law in the Third Circuit is clear: "[s]ince . . . [an] ALJ cannot reject evidence for no reason or for the wrong reason . . . , an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. In this case, the ALJ does not adequately explain why Mr. Castillo's symptoms are not credible. The only statement this Court can extract from the ALJ's decision relating to Mr. Castillo's symptoms is: "the [C]laimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent that they are inconsistent with the [] residual functional capacity assessment." (R. at 26). The ALJ's decision neither references Claimant's statements nor explains why these statements are not credible in relation to the medical records. To that end, this Court is at a loss in our reviewing function because it cannot determine whether the reasons for rejection were improper. *Cotter*, 642 F.2d at 706-07. Second, the ALJ's analysis fails to abide by the principle set forth in *Burnett*, which requires an ALJ to "set forth the reasons for his [or her] decision." *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704-705); *Torres*

---

[2] At the outset, the Court notes that Mr. Castillo's argument that the ALJ did not mention his anemia lacks merit. Specifically, the ALJ explained that "[t]he record demonstrates that the claimant has only recently (August 2009) been diagnosed with anemia . . . ." (R. at 27).

*v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008) ("This Court requires the ALJ to set forth the reasons for his decisions."); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citing *Burnett*, 220 F.3d at 119) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review."). Besides a bare recitation of Claimant's treatment reports the ALJ failed to explain her rationale in limiting Claimant to light work. Finally, the ALJ's conclusory explanation does not allow for meaningful judicial review.

For these reasons, the Court's reviewing function is constrained. Therefore, the Court will remand this matter to the Commissioner for further development of the record and an analysis that is consistent with the requirements mandated by the Third Circuit.

### C.  Claim that the ALJ Improperly Failed to Rely on the Vocational Expert's Testimony in Response to Hypothetical Limitations

Finally, the Court must determine whether the ALJ erred by failing to include in its decision a hypothetical question that was posed to the vocational expert by Claimant's Counsel. The hypothetical question at issue is as follows:

> Atty: Mr. Meola if because of fatigue and numbness due to wasting, anemia and HIV a hypothetical individual could never work more than four hours in an eight hour workday would there be any jobs existing in substantial levels in the national economy?
> VE: No. With that limitation, a person would not be able to work in the competitive labor market without special consideration.

(R. at 540).

Claimant contends that the limitations from the hypothetical above are supported by the reports of Dr. Hoffman and Dr. Bell. (Cl. Moving Br. at 30-31). For example, Claimant asserts that because "Dr. Hoffman found that [Claimant] was short of breath and easily fatigable. . . . it

stands to reason that [Claimant] would not be able to work a full eight hour work day." (*Id.* at 30).  Claimant further contends that because "Dr. Bell found that [Claimant's] immune system was compromised by [a] low CD count, low weight level and a high viral load back in July of 2007, . . . [t]his would also lead one to conclude that . . . [Claimant] could not . . . perform[] an eight hour workday but only half as much." (*Ibid.*).

The Court finds that Claimant's argument is unsupported by medical evidence and thus lacks merit for three reasons.  First, although Dr. Hoffman noted that Claimant was easily fatigued, he explained, nevertheless, that Claimant "had no major complications" was "in relatively good condition," and had "no history of wasting." (R. at 302).  Indeed, Dr. Hoffman never suggested that Claimant would not be able to work a full eight-hour workday.  Second, Dr. Bell's report neither contains a discussion of numbness nor intimates that Claimant could only work four hours per day. (*See id.* 501-503).  Therefore, the Court concludes that Counsel's hypothetical question was not supported by medical evidence.  Accordingly, the ALJ did not err by failing to include Counsel's hypothetical question in her decision.  *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("[H]ypotheticals posed must 'accurately portray' the claimant's impairments . . . 'as contained in the record.'") (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

## VI.  Conclusion

For the foregoing reasons, the Court vacates the ALJ's judgment and remands this matter to the Commissioner for further analysis in accordance with this Opinion.  An appropriate Order shall accompany this Opinion.


*s/ Esther Salas*
**Esther Salas, U.S.D.J.**